O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA SANCHEZ,<br><br>        Plaintiff,<br>    v.<br>STRYKER CORP., et al.,<br><br>        Defendants. | Case No. 2:10-cv-08832-ODW (JCGx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [58] AND DENYING PLAINTIFF'S MOTION FOR RELIEF [70]** |

## I. INTRODUCTION

Two motions are pending before this Court. The first is Stryker Corp.'s motion for summary judgment filed on March 16, 2012. (Dkt. No. 58.) Plaintiff filed her opposition on March 26, 2012, to which Stryker filed its reply on April, 2, 2012. (Dkt. Nos. 60, 65.) The Court heard the parties' oral arguments on April 16, 2012. Stryker seeks summary judgment on the basis that Plaintiff cannot proceed with her medical product liability case after the Court excluded the testimony of her expert witnesses. (*See* Dkt. No. 64.)

The second motion is Plaintiff's motion for relief under Federal Rule of Civil Procedure 60(b), filed on April 18, 2012. (Dkt. No. 70.) Stryker filed its opposition on April 30, 2012. (Dkt. No. 71.) Plaintiff requests relief from the Court's order excluding the testimony of her expert witness. Plaintiff argues relief should be

granted based on two grounds—counsel's excusable neglect and counsel's gross negligence. After considering the papers filed in support of this motion, the Court deems this motion appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. BACKGROUND

In May 2008, Plaintiff underwent cranioplasty surgery and received a Stryker Custom Cranial Implant. (UF No. 1.) She later contracted an infection at the implant site, which she alleges resulted from the non-sterile condition of the Stryker implant. (UF No. 2.) Because of the injury, Plaintiff brought this action against Stryker for negligence, strict product liability, fraud and deceit, and negligent misrepresentation. (Compl. ¶¶ 97–158.)

The Court's August 23, 2011 scheduling order required the parties to disclose expert witness reports by January 9, 2012 and to provide rebuttal expert witness reports by January 30, 2012. (Dkt. No. 47 at 3.) Plaintiff failed to serve expert reports by the January 9, 2012 deadline. (UF No. 3.) On January 23, 2012, two weeks after the expert disclosure deadline, Plaintiff identified two expert witnesses, Dr. Bock and Mr. Christensen. (UF No. 4.) She served Bock's expert report on January 23, 2012 and later served Christensen's expert report on January 30, 2012. (UF Nos. 4–5.)

Stryker then brought a motion to preclude Plaintiff's expert testimony under Federal Rule of Civil Procedure 37(c). (Dkt. No. 50.) Because Plaintiff failed to establish an exception to Rule 37(c)'s exclusionary sanction, the Court granted Stryker's motion on March 28, 2012 and excluded Plaintiff's expert witnesses. (Dkt. No. 64.)

Stryker now moves for summary judgment, contending that Plaintiff cannot establish a prima facie case because California law requires causation in medical product liability lawsuits to be proven with expert testimony. Plaintiff argues otherwise, proposing that expert testimony is not required—circumstantial evidence is enough. Two days after the Court heard the parties' oral arguments on the summary

judgment motion, Plaintiff brought a motion for relief from the Court's order excluding the testimony of Plaintiff's expert witnesses.

### III. PLAINTIFF'S MOTION FOR RELIEF

The Court first addresses Plaintiff's motion for relief. Plaintiff raises two arguments. First, Plaintiff moves on the ground that counsel's calendaring error was excusable neglect—and under Rule 60(b)(1), a court may relieve a party from a final order on the basis of mistake, inadvertence, surprise, or excusable neglect. (Mot. 5–6.) Second, Plaintiff moves under Rule 60(b)(6)'s catch-all clause of "any other reason," suggesting that her counsel committed gross negligence and the exclusion would severely prejudice her, the faultless client. (Mot. 7–8.)

**A.  Rule 60(b) legal standard**

Under Rule 60(b), the court may, upon motion of a party, withdraw or amend a final judgment or order. *Kirby Forest Indus. v. United States*, 467 U.S. 1, 18 (1984). Relief may be based upon mistake, inadvertence, surprise, excusable neglect, or for "any other reason justifying relief."[1]  Fed. R. Civ. P. 60(b)(1), (6). But only final, appealable judgments and orders fall within the purview of Rule 60(b). *United States v. Martin*, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000).

Plaintiff's Rule 60(b) motion is premature because an order imposing discovery sanctions under Rule 37 is not a final order. *Cunningham v. Hamilton County*, 527 U.S. 198, 200 (1999). Yet, in an abundance of caution, the Court will treat the Rule 37(c) exclusion order as a final order and consider Plaintiff's motion on the merits.[2]

**B.  Excusable neglect under Rule 60(b)(1)**

Excusable neglect encompasses situations where the failure to comply with a filing deadline is attributable to negligence and includes omissions caused by

---

[1] Relief may be given for other reasons, including newly discovered evidence, fraud, void judgment, or satisfied judgment. Fed. R. Civ. P. 60(b)(2)–(5).

[2] For instance, Plaintiff may contend the exclusion order amounts to a final order because it effectively ended her case. Additionally, she may argue *Cunningham* does not stand for the proposition that a Rule 37(c) exclusionary sanction is not a final order (the sanction involved in *Cunningham* was under Rule 37(a)).

carelessness. *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 394 (1993)). Under the Ninth Circuit's *Pioneer-Briones* standard, courts must consider at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Id.* (citing *Pioneer*, 507 U.S. at 395; *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997)). The determination of excusable neglect is an equitable one, taking account of all relevant circumstances surrounding the party's omission. *Id.*

Turning to the *Pioneer* factors—first, the Court finds that Stryker has been and will continue to be prejudiced. The Court visited the issue of prejudice a month ago when Stryker moved to exclude Plaintiff's expert testimony. At that time, the Court found prejudice to Stryker. To overturn that order now would only prejudice Stryker more; the April 16, 2012 deadline for pre-trial motions has passed and the June 5, 2012 trial date is about a month away. Plaintiff implicitly admits Stryker is prejudiced, or at least does not contend otherwise.[3] (Mot. 5.)

Instead of arguing Stryker is not prejudiced, Plaintiff only requests the Court to consider the severe prejudice to her, contending that the complete exclusion of her expert witnesses outweighs any prejudice Stryker may suffer. (Mot. 5–6.) Prejudice to the movant, although not an explicit *Pioneer* factor, may be included in the consideration of all relevant circumstances. *Lemoge*, 587 F.3d at 1195. The Court recognizes that its Rule 37(c) exclusion order is severe and effectively ends the litigation. But Plaintiff's negligent handling of this case severely prejudiced Stryker, as discussed in the Court's exclusion order—though arguably, the prejudice to Plaintiff is somewhat greater. (Dkt. No. 64.) Nevertheless, the expert testimony bell

---

[3] "Plaintiff acknowledges the Court's concern that Defendants were prejudiced because Plaintiff's counsel received a litigation advantage by obtaining Defendants' experts disclosures first. However, any prejudice to Defendants is outweighed by the severity of the sanction being imposed against Plaintiff." (Mot. 5.)

cannot be unrung and Plaintiff's resulting litigation advantage cannot be clawed back. Rule 37(c) is explicitly designed to punish negligent or elusive behavior during discovery and to prevent any party from gaining an advantage as a result of discovery antics. *See Yeti by Molly, Ltd., v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). And indeed, its proscribed penalty is severe. To argue that a Rule 37(c) sanction should be vacated (or reduced) because the prejudicial effect exceeds the prejudice that warranted the sanction essentially asks the Court to ignore Rule 37(c).

Second, Plaintiff's delay has a significant impact on the proceedings and the schedule set by this Court. Plaintiff's expert disclosures were two and three weeks late. Because of this deficiency, no rebuttal expert reports were served by either party. Also, this motion for relief is late—it was filed three weeks after the exclusion order that it seeks to relieve and more than one month after Stryker moved for summary judgment. Plaintiff's delay may not seem significant on the surface. But it had a profound effect—it halted litigation on the merits since January 2012 and the parties now face a jury trial scheduled for June 5, 2012 with incomplete expert discovery. To fix this, the Court must reopen discovery and allow the parties to redo their expert reports. Even so, the jury trial would have to be continued, by two to three months, to allow sufficient time for motions and pretrial. Plaintiff's slip up of the expert report due date had severe repercussions and persists to disrupt the case continuum.

Third, Plaintiff's reason for the delay is particularly weak. Plaintiff's counsel basically blames his secretary, citing an "inadvertent calendaring error." (Mot. 6.) No explanations are given; no circumstances beyond counsel's control are recounted. The Court previously noted that the real reason for the delay appeared to be counsel's inaction in discovery and the lack of remedial countermeasures. Counsel admits misjudgment and could have remedied the error, but simply did not act.[4] (*Id.*)

///

---

[4] Plaintiff's counsel "intended to move for relief to file late disclosures," but "mistakenly believed" it would be "inappropriate." (Mot. 6.)

Fourth, Plaintiff presents no evidence to show that counsel's error was made in good faith. Plaintiff never explains the circumstances behind counsel's calendaring error. For example, what due date did counsel actually calendar and why did counsel not start preparing expert disclosures, as it appears, until the moment they received Stryker's expert reports?[5] Other than baldly repeating the phrase "good faith," Plaintiff provides no credible evidence that it was.[6]

After considering the *Pioneer* factors and the surrounding circumstances, the Court is not persuaded that it should grant relief under Rule 60(b)(1). The Court stresses that the exclusionary sanction was not the result of Plaintiff's singular act of miscalendaring a docket date. Rather, it was Plaintiff's overall lack of diligence that led to that result. Accordingly, Plaintiff's motion under Rule 60(b)(1) is **DENIED**.

## C. Gross negligence under Rule 60(b)(6)

Plaintiff also moves for relief under Rule 60(b)(6)'s catch-all "any other reason," relying on the Ninth Circuit's decision in *Tani*. (Mot. 7.) Under *Tani*, a party who moves for such relief must demonstrate both injury and extraordinary circumstances beyond his control that prevented him from properly litigating the action. *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002). Plaintiff suggests that her counsel's conduct was "gross negligence," thereby constituting an "extraordinary circumstance" that warrants relief for a faultless client.[7] (Mot. 7–8.)

Unfortunately, *Tani* does not apply to this case. *Tani* held that a defendant is entitled to Rule 60(b)(6) relief from a default judgment on account of his counsel's

---

[5] Plaintiff's opposition to Stryker's motion to exclude expert testimony states: "Upon receipt of Defendants' expert disclosure . . . [Plaintiff] immediately contacted her experts and requested they provide expert disclosures as soon as possible." (Dkt. No. 51 at 1.)

[6] The fact that Plaintiff offered its experts for deposition after she missed the expert reports deadline is an insufficient showing of good faith. (Mot. 6.)

[7] Plaintiff argues that the requirements for relief under Rule 60(b)(6) are met because the Court's exclusion order was "entered as a result of gross negligence by the attorney and the client was not at fault." (Mot. 7.) Plaintiff welcomes a finding of gross negligence: "If the Court finds that Plaintiff's counsel's conduct constitutes gross negligence, Plaintiff respectfully requests that the Court withdraw or modify its order." (Mot. 8.)

gross negligence. The Ninth Circuit clarified that the holding in *Tani* was "explicitly premised upon the default judgment context of the case." *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006).

Further, even if *Tani* could apply to situations other than default judgment, *Tani* can be distinguished from the facts in this case. In *Tani*, the attorney "virtually abandoned his client" and failed to proceed with his client's defense despite court orders to do so. *Tani*, 282 F.3d at 1170. The attorney filed an answer two weeks late after failing to sign a stipulation for an extension of time to file the answer. *Id.* at 1171. The attorney also failed to serve the answer, failed to oppose a motion to strike, and failed to attend various hearings. *Id.* More importantly, the attorney deceived the client and fraudulently represented that he was properly performing his responsibilities; this misinformation "deprive[ed] [the client] of the opportunity to take action to preserve his rights." *Id.* This conduct, the Ninth Circuit concluded, "clearly constitutes gross negligence . . . vitiating the agency relationship that underlies [the] general policy of attributing to the client the acts of his attorney." *Id.*

Here, though Plaintiff's counsel readily admits gross negligence, the Court does not find that it rises to that level. From the Court's vantage point, Plaintiff's counsel did not deceive the client. Further, though Plaintiff's counsel should have done more to expedite discovery and remedy its "clerical error," counsel's inaction is not gross negligence. In addition, Plaintiff's counsel appears to have done little to nothing prior to the expert disclosure deadline; yet counsel eventually served the expert reports. That action demonstrates counsel was not grossly negligent. This is not a situation where counsel could not be awoken from its slumber, or where counsel ran off to Tahiti with the client's retainer. Counsel's representation in this case is subpar, but it does not rise to the level of gross negligence under the *Tani* standard.

The Court finds there are no "extraordinary circumstances" in this case entitling Plaintiff to relief under Rule 60(b)(6). Further, Plaintiff's reliance on *Tani* is without merit since this motion does not seek relief from a default judgment. Therefore, the

general rule still governs—Plaintiff is bound by the actions and omissions of her lawyers. *Link v. Wabash R.R.*, 370 U.S. 626, 633–34 (1962). Accordingly, Plaintiff's motion under Rule 60(b)(6) is **DENIED**.

**D.     Potential separate action for malpractice**

The Court is sympathetic to Plaintiff's injuries and her present litigation situation. As recourse, she may pursue a separate action against her counsel for malpractice. Plaintiff's counsel admits negligence throughout this motion—the basis of this motion (drafted by counsel) is that counsel was grossly negligent and the client was not at fault. (Mot. 8.) Since Plaintiff only seeks monetary damages in this case, it matters little from whom she obtains the damages.

The Court notes Plaintiff's argument that a separate action for professional malpractice does not justify denying relief under Rule 60(b)(6). (Mot. 8 (citing *Tani*, 282 F.3d at 1171.)) The possible malpractice action does not enter into the Court's analysis of Plaintiff's motion under Rules 60(b)(1) and 60(b)(6). Nevertheless, the Court points out that unlike in *Tani*, a malpractice suit here may be an adequate remedy. In *Tani*, the court reasoned that defendant's potential malpractice suit is an insufficient reason to deny relief under Rule 60(b) because: (1) defendant might not prevail; (2) the $2M default judgment against defendant now may not be alleviated by a $2M malpractice judgment years later because the present $2M judgment requires defendant to make immediate, life-altering changes; and (3) defendant will never recover the intangible business benefits that would ensue from continued use of the disputed trademark. *Tani*, 282 F.3d at 1171–72.

In this case, a judgment against Plaintiff's counsel may be as good as a judgment against Stryker. Although Plaintiff will have to litigate a malpractice lawsuit to obtain a judgment and might not prevail, waiting to resolve that lawsuit does not alter Plaintiff's present state, unlike the defendant in *Tani*.

For the above reasons, the Court **DENIES** Plaintiff's motion for relief. The testimony of Plaintiff's expert witnesses remains excluded from this case.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Stryker initially brought this motion for summary judgment on two grounds: (1) the expected exclusion of Plaintiff's expert witnesses; and (2) the insufficiency of the testimony of Plaintiff's expert witnesses. (Mot. 4, 10–13.) Once the Court issued its March 28, 2012 order excluding the testimony of Plaintiff's expert witnesses, Stryker emphasized in its reply that summary judgment should be granted on the first ground—because, without any expert witnesses, Plaintiff cannot establish the existence of a defect in Stryker's product that caused Plaintiff's injury. (Reply 5–7.) In opposition, Plaintiff argues that she can prove the existence of a defect and causation by circumstantial evidence, even without expert testimony. (Opp'n 20–21.)

### A. Legal standard for summary judgment

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.*

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

/ / /

/ / /

**B. Discussion**

Plaintiff pleaded five causes of action against Stryker: (1) negligence; (2) strict product liability, failure to warn; (3) strict product liability, manufacturing defect; (4) fraud and deceit; and (5) negligent misrepresentation. (SAC ¶¶ 97–158.) Each of these causes of action require proof of causation and injury, though slightly different in the following respects.

For negligence, Plaintiff must prove that Stryker's breach of duty relating to the design, testing, manufacturing, marketing, labeling, distribution, etc., caused the device to be non-sterile, which caused Plaintiff's injury. *See Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 292 (1988). For failure to warn, Plaintiff must establish that her injury is attributable to Stryker's failure to provide an adequate warning and this failure to warn was the proximate cause of her injury. *Singleton v. Eli Lilly, Co.*, No. 1:10-cv-2019-AWI-SKO, 2011 U.S. Dist. LEXIS 69639, at *6 (E.D. Cal. June 28, 2011) (citing *Carlin v. Superior Court*, 13 Cal. 4th 1104 (1996)). For manufacturing defect, Plaintiff must show that the Stryker device was defective (i.e., non-sterile) and that it caused Plaintiff's injury. *Nelson v. Superior Court*, 144 Cal. App. 4th 689, 695 (2006). For fraud, deceit, and negligent misrepresentation, Plaintiff must show that her injury was caused by the Stryker device, which was implanted by doctors based on Stryker's fraudulent or negligent misrepresentations concerning the device. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004); *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001).

These five causes of action have one central question—whether the specific Stryker device (i.e., the one implanted in Plaintiff's head) caused Plaintiff's injury. The central issue is not whether the device was defective. An non-sterile device may not necessarily cause a medical injury. In contrast, a sterile, non-defective device might still cause a medical injury.[8] Plaintiff's derivative causes of action (failure to

---

[8] E.g., a sterile, non-defective implant may cause a medical injury because of some side effect. If the manufacturer did not give proper warning about possible side effects, the plaintiff may prevail under a strict product liability, failure to warn theory.

warn, fraud, deceit, and negligent misrepresentation) still require proof that the Stryker device caused Plaintiff's injury, regardless of how Plaintiff or her doctors were duped into using the Stryker device.[9]

Thus, medical causation is the sole issue the Court needs to examine on this summary judgment motion.[10] In the context of medical injury actions, "causation must be proven within a reasonable medical probability based upon competent expert testimony." *Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d 396, 402 (1985). There can be many possible causes; "indeed, an infinite number of circumstances which can produce an injury or disease." *Id.* at 403. But the outer boundary of a medical tort is limited to the "probable" causes. *Id.* Probable causes in a medical tort case are beyond the experience of laymen and can only be explained through expert testimony. *Id.* Before the case could proceed to trial, "there must be some scientific testimony that can be interpreted as an inference of hypothetical probability." *Id.*

Contrary to the above legal standard, Plaintiff proposes that though her experts have been excluded, she may prove causation by circumstantial evidence. (Opp'n 20–21.) Yet, none of Plaintiff's cited cases support her contention.

Plaintiff first suggests that "the cause of injury may be proven by circumstantial evidence or expert testimony." *Willimans v. Volkwagenwerk Aktiengesellschaft*, 180 Cal. App. 3d 1244, 1268 (1986). *Willimans* pertains to automobile product liability. Medical product liability cases demand more—competent expert testimony is required to establish medical causation. *Jones*, 163 Cal. App. 3d at 403. Plaintiff next quotes that "circumstantial evidence alone may create a genuine issue of fact, sufficient to defeat a motion for summary judgment." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018 (9th Cir. 2006). But that quote is irrelevant because *Cornwell* is an

---

[9] That is, if Plaintiff cannot trace the cause of her injury back to the allegedly non-sterile Stryker device, her claims for failure to warn, fraud, deceit, and negligent misrepresentation fail, despite the perversity of the Stryker's alleged misconduct.

[10] The Court declines to opine whether Plaintiff can prove the existence of a manufacturing defect without expert testimony since this is unnecessary under the circumstances.

employment discrimination case and does not concern a medical tort. At the hearing on this matter, the Court gave Plaintiff an opportunity to present case law that stood for the proposition that medical causation could be proven through circumstantial evidence without expert testimony. Plaintiff failed to do so.

Plaintiff has not and cannot cite authority to show otherwise—*Jones* is the applicable legal standard. Under *Jones*, a plaintiff cannot withstand summary judgment when she has no expert witnesses to support medical causation. *See*, e.g., *Sanderson v. Int'l Flavors & Fragrances, Inc.*, 950 F. Supp. 981, 1002–03 (C.D. Cal. 1996) (granting summary judgment for defendants because plaintiff presented no experts that could show medical causation; also rejecting plaintiff's proposal to let a jury to use its "common sense" to infer causation from a temporal relationship between plaintiff's exposures and symptoms). In the instant case, Plaintiff's expert testimony has been excluded and cannot be used to establish causation. Plaintiff's argument that a jury should find causation based on circumstantial evidence simply contravenes California law. *See Jones*, 163 Cal. App. 3d at 402.

Without expert testimony, Plaintiff cannot prove that the Stryker implant caused Plaintiff's injuries. Thus, Plaintiff's claims for negligence and manufacturing defect fail as a matter of law. Plaintiff's derivative claims for failure to warn, fraud and deceit, and negligent representation also fail because they are predicated upon the same proof—that the Stryker implant caused Plaintiff's injury. Finally, Plaintiff's punitive damages claim fails because it requires a finding of liability under an independent cause of action.

Though granting Stryker's motion for summary judgment because of Plaintiff's discovery mishap appears unusually harsh, the Court's exclusionary sanction is well within the Court's wide latitude of discretion. *See Yeti*, 259 F.3d at 1106 ("Courts have upheld the use of the [Rule 37(c)] sanction even when a litigant's entire cause of action or defense has been precluded."). Accordingly, Stryker's motion for summary judgment is **GRANTED**.

## V.   CONCLUSION

For the reasons discussed above, Plaintiff's motion for relief is **DENIED**. Stryker's motion for summary judgment is **GRANTED**.  Judgment shall be entered in favor of Defendants Stryker Corp., Stryker Sales Corp., Howmedica Osteonics Corp., and Contract Medical Manufacturing LLC.

**IT IS SO ORDERED.**

May 2, 2012

_____
**HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**